*No. 14-3091*

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

➤➤◀◀

ARIE S. FRIEDMAN, *et al.*,

*Plaintiffs-Appellants,*

*against*

CITY OF HIGHLAND PARK,

*Defendant-Appellee.*

———————

*On Appeal from the United States District Court*
*for the Northern District of Illinois*
*No. 1:13-cv-09073*
*Honorable John W. Darrah*

## MOTION FOR LEAVE TO FILE BRIEF ON BEHALF OF ARMALITE, INC., COLT MANUFACTURING COMPANY LLC, REMINGTON ARMS COMPANY, LLC, SIG SAUER, INC., SMITH & WESSON CORP., STAG ARMS, STURM, RUGER & CO., INC., AND THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

John Parker Sweeney
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com
Attorney for *Amici Curiae*

Proposed *Amici Curiae* ArmaLite, Inc., Colt Manufacturing Company LLC, Remington Arms Company, LLC, SIG SAUER, Inc., Smith & Wesson Corp., Stag Arms, Sturm, Ruger & Co., Inc., and the National Shooting Sports Foundation, Inc. (collectively, "*Amici*"),through their undersigned counsel and pursuant to Fed. R. App. P. 29(b), hereby move this Court for leave to file an *amicus curiae* brief in support of Plaintiffs-Appellants' position in this appeal. *Amici* have unique information that will be helpful to this Court and that the lawyers for the parties are not able to provide in similar detail. *Amici* have interest in a number of other cases pending before other courts involving challenges to similar bans that may be affected by the Court's decision in this appeal. *Ryan v. Commodity Futures Trading Commission*, 125 F.3d 1062, 1063 (1997). In support of this motion, *Amici* state as follows:

1.    *Amicus Curiae* ArmaLite, Inc. ("Armalite"), is a manufacturer of firearms that are currently banned by Highland Park, Ill., City Code § 136.005(1) (the "Ordinance"). Located in Geneseo, Illinois, ArmaLite was originally founded in 1954. Under the guidance of Chief Engineer Eugene Stoner, ArmaLite invented and developed the original AR-15 (the "AR," still used today, stands for "ArmaLite") during the late 1950s and early 1960s. ArmaLite continues to manufacture AR-platform rifles for sale to the civilian market.

2

2.    *Amicus Curiae* Colt Manufacturing Company LLC ("Colt") is a Connecticut-based manufacturer of firearms banned by the Ordinance. Colt traces its origins to Samuel Colt's 1836 patent for a handgun that incorporated a revolving cylinder. Samuel Colt's revolver led to Colt's status as one of the nation's most venerated firearms manufacturers, a reputation that is maintained today not only in Colt's continued manufacture of some of the finest handguns in the world, but also in its manufacture of high-quality AR-platform rifles. Colt, whose parent company is the owner of the trademark "AR-15," has manufactured AR-platform rifles for the civilian market since 1964.

3.    *Amicus Curiae* Remington Arms Company, LLC ("Remington"), is part of the Remington Outdoor Company. The Remington Outdoor Company ("ROC"), headquartered in Madison, N.C., designs products for the hunting, shooting, self-defense, military, and law enforcement markets. Founded in 1816, ROC is the nation's oldest gun maker and one of the largest domestic producers of firearms and ammunition. ROC employs over 3,500 people and distributes its products throughout the U.S. and over 55 countries. ROC includes globally recognized brands such as Remington®, Remington 1816®, Bushmaster®, DPMS®, Marlin®, H&R®, Mountain Khakis®, Advanced Armament Corp.®, Dakota®, Nesika®, Storm Lake® and Barnes® Bullets.

4.     *Amicus Curiae* SIG SAUER, Inc. ("SIG SAUER"), headquartered in Newington, New Hampshire, is a manufacturer of world-class sporting and defensive firearms, including firearms banned by the Ordinance. Since making its first rifle in 1870, SIG SAUER has had a rich history of producing, among other firearms, high quality Modern Sporting Rifles which are either AR-platform rifles or proprietary designs. SIG SAUER's mission is to be a reliable, long-term partner to its customers, recognized for the quality and value of its products and the reliability of its commitments.

5.     *Amicus Curiae* Smith & Wesson Corp. ("Smith & Wesson"), located in Springfield, Massachusetts, was founded in 1852 by Horace Smith and Daniel B. Wesson. Smith & Wesson developed the first successful fully self-contained cartridge revolver available in the world. Later, in 1899, Smith & Wesson introduced one of its most famous and popular revolvers, the .38 Military & Police, also known as the Model 10, which is still produced today. Smith & Wesson remains a leader in firearm manufacturing and design, delivering a broad portfolio of quality firearms, including Modern Sporting Rifles banned by the Ordinance, to the civilian market. It is impossible to understand the history of modern firearms without understanding the history of Smith & Wesson.

6.     *Amicus Curiae* Stag Arms ("Stag Arms"), located in New Britain, Connecticut, is a leading manufacturer of firearms banned by the Ordinance. Stag

Arms was founded in 2003 with the express goal to manufacture reliable, American-made, competitively priced AR-platform rifles. Since its founding, and due to the increasing popularity of Modern Sporting Rifles in the civilian population, Stag Arms has become one of the largest manufacturers of firearms in the United States. Stag Arms' product line development is entirely responsive to customer demand and feedback, giving Stag Arms the highest customer satisfaction rate in the industry.

7.      *Amicus Curiae* Sturm, Ruger & Co., Inc. ("Ruger"), founded in Southport, Connecticut, in 1949, is one of the nation's leading manufacturers of rugged, reliable firearms for the commercial sporting market, including firearms banned by the Ordinance. A full-line manufacturer of American-made firearms, Ruger offers consumers over 400 variations of more than 30 product lines. For more than 60 years, Ruger has been a model of corporate and community responsibility. Its motto, "Arms Makers for Responsible Citizens," exemplifies Ruger's commitment to safe and responsible use of firearms by law-abiding citizens as Ruger works to deliver quality and innovative firearms.

8.      *Amicus Curiae* National Shooting Sports Foundation, Inc. ("NSSF"), is the national trade association for the firearms, ammunition, and hunting and shooting sports industry. It is a non-profit, tax-exempt corporation that is comprised of over 10,000 federally-licensed firearms manufacturers, distributers,

and retailers. Its members manufacture firearms that are prohibited by the Ordinance. Its members have unique knowledge of the history and utility of the firearm features outlawed by the Ordinance and can provide the Court with an accurate history of the civilian use of each of the features. This information is vital to the Court's understanding of the usefulness of the features of the banned firearms for home defense, as well as other lawful uses.

9.    *Amici* are in a unique position to provide information to this Court that is necessary for the resolution of the issues on appeal, and which is unlikely to be covered in similar depth by any of the parties. Because *Amici* have manufactured for decades firearms now banned by Highland Park, they are capable of providing this Court with a detailed history of the firearms at issue and the lawful civilian purposes for which these firearms are used. Furthermore, as the challenged Ordinance expressly bans firearms merely based upon their having certain enumerated features,[1] the parties and this Court will benefit from *Amici's*

---

[1]    Highland Park prohibits the possession, transfer, and manufacture of a semiautomatic rifle that has the capacity to accept a [magazine with a capacity greater than 10] and one or more of the following: (a) Only a pistol grip without a stock attached; (b) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand; (c) A folding, telescoping, or thumbhole stock; (d) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the Firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or (e) A Muzzle Brake or Muzzle Compensator.

explanations of what the features are, and what the features are designed to do. *Amici* in their proposed Brief will provide this Court with a straightforward, exhaustive, and helpful description of these features, and believe that such a discussion will assist not only the Court, but also the parties. *Amici* believe the Court's access to the perspective of *Amici* who actually make the firearms Highland Park seeks to ban will advance the interests of justice in this case.

10.    *Amici* manufacture or represent the manufacturers of many of the firearms banned by the City of Highland Park. *Amici* sell these firearms throughout the country. Other states and localities have enacted similar bans of *Amici's* firearms. Litigation challenging a number of those similar bans on *Amici's* firearms is pending in various stages of resolution in a number of other courts. This Court's resolution of the issues in this appeal may well impact the course and outcome of litigation challenging those other bans that will affect *Amici's* interests in distributing their firearms in those other states and localities.

11.    Counsel for the Plaintiffs-Appellants have consented to the filing of the attached Brief. Counsel for *Amici* timely contacted counsel for Defendant-Appellee Highland Park to request consent. Highland Park has withheld consent,

Highland Park, Ill., City Code § 136.001(C)(1).

but has not stated a reason for its withholding consent, or whether it will oppose this Motion.

12.     For the foregoing reasons, *Amici* respectfully request that their Motion for Leave to File as *Amici Curiae* be granted. A copy of the proposed *Amici Curiae* Brief is attached as Exhibit A.


Respectfully submitted,

*/s/ John Parker Sweeney*
John Parker Sweeney
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com
Attorney for *Amici Curiae*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of November, 2014, the foregoing Motion for Leave to Appear as *Amici Curiae* and the proposed Brief were served, via electronic delivery, to all counsel via the Court's CM/ECF system which will forward copies to Counsel of Record.

*/s/ John Parker Sweeney*
Of Counsel

# EXHIBIT A

*No. 14-3091*

IN THE

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

FOR THE SEVENTH CIRCUIT

➤➤◄◄

ARIE S. FRIEDMAN, *et al.*,

*Plaintiffs-Appellants,*

*against*

CITY OF HIGHLAND PARK,

*Defendant-Appellee.*

―――――――

*On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:13-cv-09073
Honorable John W. Darrah*

## BRIEF OF *AMICI CURIAE* ARMALITE, INC., COLT MANUFACTURING COMPANY LLC, REMINGTON ARMS COMPANY, LLC, SIG SAUER, INC., SMITH & WESSON CORP., STAG ARMS, STURM, RUGER & CO., INC., AND THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. IN SUPPORT OF PLAINTIFFS-APPELLANTS

John Parker Sweeney
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com
Attorney for *Amici Curiae*

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: _____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

_____

_____

_____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

_____

_____

_____

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

_____

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

_____

Attorney's Signature: _____    Date: _____

Attorney's Printed Name: _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** _____

Address: _____

_____

Phone Number: _____    Fax Number: _____

E-Mail Address: _____

rev. 01/08 AK

Supplemental Answers to Corporate Disclosure Form Question 3

i)  Identify all *Amici's* parent corporations, if any:

1)      ArmaLite, Inc.

ArmaLite, Inc. is owned by Strategic Armory Corps.

2)      Colt Manufacturing Company LLC

Colt Defense LLC and New Colt Holding Corp own a portion of Colt Manufacturing Company LLC.

3)      Remington Arms Company, LLC

Remington is part of the Remington Outdoor Company, Inc., which is a holding company of various American firearm manufacturers. Remington Outdoor Company, Inc. is owned by Cerberus Capital Management, L.P.

4)      SIG SAUER, Inc.

SIG SAUER, Inc. is owned by Sig Sauer US Holding LP and L&O Finance GmbH.

5)      Smith & Wesson Corp.

Smith & Wesson Corp. is a wholly owned subsidiary of Smith & Wesson Holding Corporation.

6)      Stag Arms

None.

7)     Sturm, Ruger & Co., Inc.

None.

8)     National Shooting Sports Foundation, Inc.

None.

ii) List any publicly held company that owns 10% or more of the party's or amicus' stock:

1)     ArmaLite, Inc.

None

2)     Colt Manufacturing Company LLC

None.

3)     Remington Arms Company, LLC

None

4)     SIG SAUER, Inc.

None

5)     Smith & Wesson Corp.

Smith & Wesson Holding Corporation.

6)     Stag Arms

None.

7)     Sturm, Ruger & Co., Inc.

None.

8)     National Shooting Sports Foundation, Inc.

None.

Table of Contents

Interests of *Amici Curiae* ........................................................................1

I.    Introduction..................................................................................5

II.   Ordinance at Issue.......................................................................6

III.  The History of the AR-15, the Quintessential Modern Sporting Rifle ...........7

IV.   Popularity, adaptability, and utility of the Modern Sporting Rifle .................8

V.    Utility of Specific Features................................................................11

      A) Pistol grip without a stock attached...............................................12

      B) A protruding grip that can be held by the non-trigger hand...........................14

      C) Folding, telescoping, or thumbhole stock .....................................14

           1)  Folding stock .................................................................15

           2)  Telescoping stock .........................................................15

           3)  Thumbhole stock ..........................................................17

      D) Shroud attached to the barrel that partially or completely
      encircles the barrel..........................................................................17

      E) A muzzle brake or compensator .................................................18

      CONCLUSION ...............................................................................19

Table of Authorities

**Cases**

*Staples v. U.S.*, 511 U.S. 600 (1994) ........................................................................8

**Statutes**

26 U.S.C. § 5811 ........................................................................................................8

Fed. R. App. P. 29(c)(5).............................................................................................1

Highland Park, Ill., City Code § 136.001(C)(1) .......................................................6

Highland Park, Ill., City Code § 136.005(1)..............................................................1

**Other Authorities**

ArmaLite, Inc., A Historical Review of ArmaLite,
   http://www.armalite.com/images/Library/History.pdf (last visited November 5,
   2014) ........................................................................................................................7

Christopher S. Koper, An Updated Assessment of the Federal Assault Weapons
   Ban: Impacts on Gun Markets and Gun Violence, 1994-2003 ...........................10

Colt Manufacturing, LLC., History, http://www.colt.com/Company/History.aspx
   (last visited November 5, 2014) ...........................................................................7

http://picturearchive.gunauction.com/4241203238/10354802/picture%20368.jpg_t
   humbnail0.jpg (traditional stock); ......................................................................12

http://www.cherrys.com/pedpics/S235b.jpg...........................................................14

Video of Telescoping Stock,
http://youtu.be/4zKauEx9yn0?list=PLCQfSBvf7Jx9yHKbDIIKyjJufNd20Rz-N..16

## INTERESTS OF *AMICI CURIAE*

As elaborated below, each of the proposed *Amici Curiae* either manufactures, or represents the manufacturers of, Modern Sporting Rifles (firearms based on AR-15 and AK-47 platforms).[1] The Modern Sporting Rifle (sometimes referred to as "MSR") is one of the most functional, effective and popular firearms sold in America today.

*Amicus Curiae* ArmaLite, Inc. ("ArmaLite"), is a manufacturer of firearms that are currently banned by Highland Park, Ill., City Code § 136.005(1)(the "Ordinance"). Located in Geneseo, Illinois, ArmaLite was originally founded in 1954. Under the guidance of Chief Engineer Eugene Stoner, ArmaLite invented and developed the original AR-15 (the "AR," still used today, stands for "ArmaLite") during the late 1950s and early 1960s. ArmaLite continues to manufacture AR-platform rifles for sale to the civilian market.

*Amicus Curiae* Colt Manufacturing Company LLC ("Colt") is a Connecticut-based manufacturer of firearms banned by the Ordinance. Colt traces its origins to Samuel Colt's 1836 patent for a handgun that incorporated a revolving cylinder. Samuel Colt's revolver led to Colt's status as one of the nation's most venerated firearms manufacturers, a reputation that is maintained

---

[1]     *Amici* make the following disclosure pursuant to Fed. R. App. P. 29(c)(5): No party's counsel authored this brief in whole or in part. No party, party's counsel, nor any other person contributed any money to fund preparing or submitting this brief, other than *Amici*.

1

today not only in Colt's continued manufacture of some of the finest handguns in the world, but also in its manufacture of high-quality AR-platform rifles. Colt, whose parent company is the owner of the trademark "AR-15," has manufactured AR-platform rifles for the civilian market since 1964.

*Amicus Curiae* Remington Arms Company, LLC ("Remington"), is part of the Remington Outdoor Company. The Remington Outdoor Company ("ROC"), headquartered in Madison, N.C., designs products for the hunting, shooting, self-defense, military, and law enforcement markets. Founded in 1816, ROC is the nation's oldest gun maker and one of the largest domestic producers of firearms and ammunition. ROC employs over 3,500 people and distributes its products throughout the U.S. and over 55 countries. ROC includes globally recognized brands such as Remington®, Remington 1816®, Bushmaster®, DPMS®, Marlin®, H&R®, Mountain Khakis®, Advanced Armament Corp.®, Dakota® Nesika®, Storm Lake® and Barnes® Bullets.

*Amicus Curiae* SIG SAUER, Inc. ("SIG SAUER"), headquartered in Newington, New Hampshire, is a manufacturer of world-class sporting and defensive firearms, including firearms banned by the Ordinance. Since making its first rifle in 1870, SIG SAUER has had a rich history of producing, among other firearms, high quality Modern Sporting Rifles which are either AR-platform rifles or proprietary designs. SIG SAUER's mission is to be a reliable, long-term partner

2

to its customers, recognized for the quality and value of its products and the reliability of its commitments.

*Amicus Curiae* Smith & Wesson Corp. ("Smith & Wesson"), located in Springfield, Massachusetts, was founded in 1852 by Horace Smith and Daniel B. Wesson. Smith & Wesson developed the first successful fully self-contained cartridge revolver available in the world. Later, in 1899, Smith & Wesson introduced one of its most famous and popular revolvers, the .38 Military & Police, also known as the Model 10, which is still produced today. Smith & Wesson remains a leader in firearm manufacturing and design, delivering a broad portfolio of quality firearms, including Modern Sporting Rifles banned by the Ordinance, to the civilian market. It is impossible to understand the history of modern firearms without understanding the history of Smith & Wesson.

*Amicus Curiae* Stag Arms ("Stag Arms"), located in New Britain, Connecticut, is a leading manufacturer of firearms banned by the Ordinance. Stag Arms was founded in 2003 with the express goal to manufacture reliable, American-made, competitively priced AR-platform rifles. Since its founding, and due to the increasing popularity of Modern Sporting Rifles in the civilian population, Stag Arms has become one of the largest manufacturers of firearms in the United States. Stag Arms' product line development is entirely responsive to

customer demand and feedback, giving Stag Arms the highest customer satisfaction rate in the industry.

*Amicus Curiae* Sturm, Ruger & Co., Inc. ("Ruger"), founded in Southport, Connecticut, in 1949, is one of the nation's leading manufacturers of rugged, reliable firearms for the commercial sporting market, including firearms banned by the Ordinance. A full-line manufacturer of American-made firearms, Ruger offers consumers over 400 variations of more than 30 product lines. For more than 60 years, Ruger has been a model of corporate and community responsibility. Its motto, "Arms Makers for Responsible Citizens," exemplifies Ruger's commitment to safe and responsible use of firearms by law-abiding citizens as Ruger works to deliver quality and innovative firearms.

*Amicus Curiae* National Shooting Sports Foundation, Inc. ("NSSF"), is the national trade association for the firearms, ammunition, and hunting and shooting sports industry. It is a non-profit, tax-exempt corporation that is comprised of over 10,000 federally-licensed firearms manufacturers, distributers, and retailers. Its members manufacture firearms that are prohibited by the Ordinance. Its members have unique knowledge of the history and utility of the firearm features outlawed by the Ordinance and can provide the Court with an accurate history of the civilian use of each of the features. This information is vital to the Court's understanding of

4

the usefulness of the features of the banned firearms for home defense, as well as other lawful uses.

## I.      Introduction.

The Modern Sporting Rifles banned by the City of Highland Park's Ordinance are used by law-abiding, responsible citizens across the country each and every day. They are the most commonly sold rifles in America, are the most frequently used rifles by the champions in the U.S. Civilian Marksmanship National Match target shooting event at Camp Perry, Ohio, and are purchased in large part for their usefulness in home defense. Simply put, the firearms banned by Highland Park represent the pinnacle of safety, utility, and effectiveness of long guns for civilian purposes in today's market. Highland Park's decision to prohibit these firearms because of certain cosmetic features will not advance public safety, but will have a deleterious effect on the ability of countless law-abiding, responsible citizens to engage in home defense and other lawful activities with firearms of their choosing.

The features banned by the Ordinance are not military, criminal, or dangerous. Rather, these features are part of the modern trend towards making firearms safer, more ergonomic, and more accurate. From the parents defending their families, to the hunters taking game for food, to the Olympic competitors representing this country, every person who has purchased a firearm now

prohibited by Highland Park has done so because the features with which their rifles have come equipped increase the likelihood of success.

The manufacturers appearing as *Amici* in this brief, as well as others whose interests are represented by *Amicus* NSSF, produce the firearms banned by the Ordinance because they are safe, accurate, useful for lawful purposes (including self defense in the home), and extremely popular with responsible, law-abiding citizens. As shown in this brief, the features prohibited by the Ordinance, contrary to Highland Park's unsubstantiated and plainly erroneous contention that they were "designed for use in combat, rather than self-defense in the home," Dkt. 44 at p. 10, are functionally no different than their analogs on traditional sporting firearms, and are designed expressly to make Modern Sporting Rifles safer, more accurate, and more useful for lawful purposes.

## II.    Ordinance at Issue.

Highland Park prohibits the possession, transfer, and manufacture of a

> semiautomatic rifle that has the capacity to accept a [magazine with a capacity greater than 10] and one or more of the following: (a) Only a pistol grip without a stock attached; (b) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand; (c) A folding, telescoping, or thumbhole stock; (d) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the Firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or (e) A Muzzle Brake or Muzzle Compensator.

Highland Park, Ill., City Code § 136.001(C)(1).

6

**III.    The History of the AR-15, the Quintessential Modern Sporting Rifle.**

The AR-15 rifle, banned by Highland Park, the most popular semi automatic rifle on the market today, is paradigmatic of the prohibited firearms. In 1954, the Fairchild Engine and Airplane Corporation created the ArmaLite division to develop small arms. ArmaLite, Inc., A Historical Review of ArmaLite, http://www.armalite.com/images/Library/History.pdf (last visited November 5, 2014). ArmaLite developed numerous rifles based on the work of Eugene Stoner, who was a decorated Marine who served in World War II and was an expert in ordinance. *Id.* ArmaLite developed the AR-10 based on radically different designs and made with radically different materials than the rifles used in World War II. *Id.* These choices made the rifle lighter and easier to use, but it ultimately did not win the contract to become the standard military rifle of the 1960s. *Id.*

ArmaLite's design was, however, seen as promising, and the Army asked ArmaLite to produce a scaled down model. ArmaLite complied, creating the AR-15. The AR-15 was not successful with the military, however, *id.*, and in 1959, ArmaLite licensed the design for the AR-15 to Colt. Colt retained the designation AR-15 for its commercial rifles, *id.*, honoring the fact that ArmaLite made the mold of what has become the most popular semiautomatic rifle design in America.

The modern AR-15 differs significantly from its military cousin, the M16. The M16 was designed, and is manufactured, for fully automatic fire. Colt

7

Manufacturing, LLC., History, http://www.colt.com/Company/History.aspx (last visited November 5, 2014). The capability for fully automatic fire is what differentiates military firearms, such as the M16, from civilian firearms, like the modern AR-15, that are now banned in Highland Park.[23]

AR-15 style rifles have been manufactured continuously since 1963. Today, over 50 different manufacturers make their own version of ArmaLite's 50-year-old design. *Amici* ArmaLite, Colt, Remington, Ruger, SIG SAUER, Smith & Wesson, and Stag Arms all manufacture rifles based on the AR-15 platform. These manufacturers have built firearms for hunting, competitive shooting, and self defense.

## IV. Popularity, adaptability, and utility of the Modern Sporting Rifle.

The reason that so many different companies have created their own AR-15 style firearms is that these firearms are immensely popular with the civilian market. Millions of law-abiding citizens have chosen AR-15 style firearms for

---

[2]     The federal government has recognized the profound difference between fully automatic fire and semi automatic fire. Fully automatic firearms (defined as "machine guns") are heavily regulated by the federal government, and require a special background check and expensive tax stamp for their purchase. 26 U.S.C. § 5811.

[3]     One of the significant distinctions between lower receivers for AR-15 rifles and lower receivers for fully automatic military rifles such as the M16 is that the former are not readily convertible to fully automatic fire. Because of additional parts required to implement fully automatic fire, an AR-15 lower receiver would have to be significantly machined to accommodate this modification. *See Staples v. U.S.*, 511 U.S. 600, 603 (1994) (discussing distinctions between AR-15 and M16, and differences in design and manufacture of lower receiver for each). *Staples* also classified AR-15s as firearms that "traditionally have been widely accepted as lawful possessions." *Id.* at 612.

8

home defense, hunting, and competitive shooting, and there are at least eight million Modern Sporting Rifles in circulation today. Br. of Plaintiffs-Appellants' at 8-9.

There are many reasons for the firearm's immense popularity. Modern Sporting Rifles are reliable, accurate, and easy to use. When compared to a traditional sporting rifle, an AR-platform rifle generally is lighter and has less recoil, and is manufactured from materials not prone to warping or otherwise being affected by exposure to the natural elements. These firearms are commonly used for hunting, target and competitive shooting, and home defense.

As a result, *Amici* make a number of Modern Sporting Rifles for specific lawful purposes. For hunting, *Amici* offer rifles, often camouflaged, tailored for the use of telescopic hunting scopes, chambered in a number of appropriate hunting cartridges. Addendum ("Add.") at A-2, A-17, A-18, A-22. *Amici* also produce AR-platform rifles that are designed specifically for competitive target shooting. These particular rifles generally have longer, heavier barrels (which contribute to consistent accuracy) and match-grade trigger assemblies. Add. at A-3, A-15.

Because choosing a firearm for home defense is such a personal decision, *Amici* do not market AR-platform rifles in a pre-designated "self defense" configuration. Such a model is not necessary because one of the key desirable

aspects of the AR-platform rifle is that it is a modular platform, capable of complete personalization.

A central element of the immense popularity of AR-platform rifles is their adaptability. It is simple to exchange upper receivers or barrels to fire different calibers from the same platform. Many different forms of traditional iron sights are available, as are telescopic sites and other optical sites, which may be more appropriate for hunting or long-range shooting. A flashlight can be added to the forestock of the firearm, making it more useful for home defense, especially in low light. Pistol grips of varying length, width, grip surface, and angle can be substituted to suit the ergonomics and preference of the shooter. As a practical matter, the customizable nature of the firearm is limited only by the needs of the shooter and the purpose for which the firearm is to be used.

This flexibility and adaptability translate into a highly-functional firearm that can be used for many varying lawful applications. This is borne out by the results of a study conducted by *Amicus* NSSF. In 2013, *Amicus* NSSF conducted a survey of 21,942 confirmed owners of Modern Sporting Rifles. When asked what their reasons were for owning a Modern Sporting Rifle, MSR owners listed target shooting as the primary purpose, followed by self defense. Modern Sporting Rifle (MSR) Comprehensive Consumer Report 2013 Ownership, Usage and Attitudes

Toward Modern Sporting Rifles, at p. 34. Also listed were collecting and competition shooting, all indisputably lawful purposes.[4]

Inextricable from the adaptability and utility of AR-platform rifles, and a central component of their undeniable popularity in the civilian marketplace, are the features that Highland Park seeks to ban through the Ordinance. As shown below, these features are not specific to military use, and are not new technology in any meaningful way. What these features represent is nothing more than the AR-15's initial design requirements: a firearm with high utility that uses innovative solutions and modern materials, even though its design is over 50 years old. The banned features may provide better ergonomics or higher reliability, accuracy or safety than the features on more traditional firearms, all of which allow the shooter to use the firearm safely and efficiently, and for its designed lawful purpose.

## V.    Utility of Specific Features.

The specific features that Highland Park has chosen to prohibit do not make firearms any more dangerous or more attractive to criminals. They are not "military" in design.[5] In fact, many of the features are safety and accuracy

---

[4]    It is worth noting that Modern Sporting Rifles are very rarely used in crime. Christopher S. Koper, An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994-2003, at pp. 15-16. This fact was conceded by Highland Park in the district court. *See* Br. of Plaintiffs-Appellants at p. 19.

[5]    The allegation that some feature of an AR-15, or the rifle itself, is "military" in design is a nonsensical red herring, designed to provoke an emotional response, and totally detached from the reality of firearm design and usage. Nearly every

enhancing features that permit law-abiding citizens to better use their firearms for lawful purposes.

A) *Pistol grip without a stock attached.*[6]

Pistol grips on firearms are ubiquitous. Much more ergonomic than traditional straight or semi-pistol stocks, they permit more accurate and consistent firing from the shoulder position because the grip forces shooters to properly seat rifles against their shoulders while aiming down the sights. Pistol grips also position the shooters' hands below the moving action of the rifles so that they are not in danger of contacting any of the rifles' moving parts when the action cycles.

---

firearm design has been used by the military of that time period. Firearm development in the civilian market has always tracked firearm development in the military arena. If the firearms banned by the Ordinance were truly "military," they would be capable of fully automatic or "burst" fire (more than one round fired per single trigger pull, but fewer than the entire magazine) like the U.S. Military's M16 and M4 are. But they are not. Furthermore, the military currently uses firearms that are unquestionably suitable for civilian use, yet Highland Park does not identify the "military" nature of those firearms. *See, e.g.*, the M40 Marine Sniper Rifle, which is a bolt-action rifle chambered in 7.62mm and equipped with a telescopic site. Add. at A-11. This rifle is materially indistinguishable from the Remington Model 700 chambered in .308 Winchester, one of the most popular deer hunting rifles available in America today. Add. at A-19.

[6]     The language of the Ordinance is confusing with respect to banning a "pistol grip without a stock attached." *Amici* assume that this statement refers to a pistol grip without a stock attached *to the pistol grip*, as opposed to a pistol grip without a stock attached *to the firearm*. This is an important distinction. A "pistol grip" on a rifle or shotgun is simply a grip that orients the shooting hand in a more vertical position. Pistol grip stocks (sometimes now referred to as "semi-pistol grips" to distinguish them from detached, vertical pistol grips) were simply an accommodation on longarms designed to provide better ergonomics. Traditionally, the purchaser of a longarm could choose between a "pistol grip" stock and a "straight stock;" this was largely a matter of personal preference. *Compare* Add. at A-19 (semi-pistol grip) *with* http://picturearchive.gunauction.com/4241203238/10354802/picture%20368.jpg_t humbnail0.jpg (traditional stock); *see also* Add. at A-24 (modern pistol grips).

Pistol grips are particularly important in the context of competitive shooting. They provide competitors the ability to switch out grips to find ones that provide the angle most suited to their style of holding the firearm. *See* Add. at A-5 to A-9 (illustrating differing angles of pistol grips). Having an improperly angled grip would decrease accuracy and would limit a person's ability to compete effectively.

Pistol grips are also important in the context of self defense. A pistol grip provides a much more secure grip on the firearm, making it much more difficult to have the rifle taken away by an aggressor. Moreover, holding a firearm by the pistol grip naturally positions the rifle in the proper location when looking down the sight. This is an important consideration when using a rifle in defense, because a citizen defending against an attack will be under great stress and could have difficulty properly aligning the firearm. Finally, the pistol grip provides a defensive shooter more control over the firearm, as it is easier to maintain control of the rifle after firing because the pistol grip provides another measure of support during recoil.

The pistol grip found on an AR-15 is, if nothing else, a necessary concession to the design of the firearm's operating mechanism. AR-platform rifles typically have a "buffer tube" which extends out of the back of the firearm, and is part of the mechanical action of the firearm. This buffer tube is usually integrated into the stock of the firearm. Add. at A-12. The location of the buffer tube combined with

13

the location of the trigger assembly of the AR-15 make anything other than a detached pistol grip ergonomically inappropriate for the firearm.

B) *A protruding grip that can be held by the non-trigger hand.*

A grip such as this is normally called a vertical fore grip or a vertical grip. Add. at A-10, A-23. A vertical grip aids shooters by providing a sturdy, secure location to grip these firearms with the non-trigger hand. This allows shooters to more easily manage recoil and to retain the firearm if confronted by an aggressor, much like a pistol grip. A vertical grip also provides a location for defensive users to attach a light, to better enable them to accurately and safely use their firearms at night. This is an important concern as it minimizes the risk of errant shots in low-light conditions. For these reasons, most rifles designed specifically for home defense are equipped with a vertical grip.

Vertical grips such as those prohibited by Highland Park have been used by Olympic competitors for years, because they increase the stability and accuracy of the firearms. They have also been a feature of accurate target rifles for over 100 years. *See, e.g.,* http://www.cherrys.com/pedpics/S235b.jpg.

C) *Folding, telescoping, or thumbhole stock.*

These types of stocks all provide additional measures of adaptability and/or control for the firearm. This is especially important in homes in which more than one individual uses a firearm, as it must properly fit each user to ensure safety.

**1) Folding stock.**

A folding stock permits a rifle to be stored and transported more compactly. Add. at A-21. It does not impact the functionality of a firearm and it does not make it any more dangerous. In fact, nearly all firearms with a folding stock cannot fire when the stock is folded. Thus, the firearm is identical to a firearm with a fixed stock when actually being used.

Having the ability to easily store and transport a firearm is important for both self defense and hunting activities. Having a more compact firearm allows defensive shooters more options in choosing where to safely store their firearms. As to hunting, outdoorsmen must carry their firearms long distances to their hunting grounds. Having a more compact firearm allows them more mobility and decreases the difficulty associated with hunting in harsh terrain such as mountains and thick trees.

**2) Telescoping stock.**

Nearly all AR-15 style firearms are sold with a telescoping stock. A telescoping stock extends or retracts a few inches to accommodate an individual's particular build. Add. at A-13, A-16; *see also* http://youtu.be/4zKauEx9yn0?list=PLCQfSBvf7Jx9yHKbDIIKyjJufNd20Rz-N. This is critically important because it impacts the ability of shooters to crisply pull the trigger and to keep the firearm safely stabilized during firing.

15

A telescoping stock also allows more than one shooter to use the same firearm. This is a critical concern for families in which both a husband and wife wish to shoot the same firearm but are of different statures. A telescoping stock allows each of them to adjust the firearm to fit them personally, thus obviating the need to purchase another expensive firearm in order to shoot safely and accurately. Given that many families cannot afford to purchase multiple firearms to fit each member specifically, a telescoping stock allows all members of the family to engage in armed self defense, should the need arise.

Hunters also have particular use for telescoping stocks. Because hunters spend hours in the outdoors when hunting, they must dress for the weather of a particular season, and variable weather. This means that they must wear many layers of clothes during the winter, and fewer during the summer. The addition or subtraction of layers increases or decreases the bulk of clothing against which the firearm rests when a hunter aims. Being able to adjust the length of the stock permits a hunter to tailor the firearm to suit his or her needs all year long. This is not only an accuracy issue, but also a safety issue; it permits the hunter to have better control of the firearm when shooting.

As the adjustable stock of an AR-15 can only change the length of the firearm approximately three inches, there is no appreciable increase in the concealability of an AR-15 simply because its stock is adjustable. *See* Add. at A-16

(illustrating the length of a firearm with a telescoping stock). The stock of the AR-15 adjusts, as discussed above, for the sole purpose of fitting the firearm to the shooter and the shooter's particular circumstances.

**3) Thumbhole stock.**

A thumbhole stock, much like a pistol grip, is designed to provide shooters with a more comfortable, stable, and ergonomic grip on a firearm. A thumbhole stock differs from a pistol grip in that it incorporates into a traditional stock design the ability of a shooter to grasp the firearm firmly. Thumbhole stocks are used by competitive shooters the world over because they provide for exceptional precision control. Add. at A-20.

D) *Shroud attached to the barrel that partially or completely encircles the barrel.*

Every rifle has something that covers a portion of the barrel to prevent shooters from burning their hands when firing their firearms. Traditional rifles have an extended stock that partially encircles the barrel to permit a shooter to hold the firearm under the barrel while shooting. Without this wooden stock, the firearm could not be fired with two hands. Add. at A-19.

Modern rifles such as the AR-15 accomplish the same goal by affixing a plastic or light alloy attachment to the firearm. Add. at A-1. This attachment is functionally identical to an extended stock on a traditional rifle, except that its plastic composite or light alloy provides a lighter firearm. This attachment also

17

allows for a shooter to affix accessories, such as sights, flashlights, and vertical grips, which make the firearm safer, more accurate, and easier to use.

Finally, a barrel shroud serves to protect the inner mechanism of the firearm from damage. An AR-15 operates by venting gas produced when a round fires backward toward the action. This gas then cycles the firearm to eject a spent casing and to load a new round. The gas tube that makes this action possible is fragile and is placed along the top of the barrel, underneath the barrel shroud. It was placed there so the shroud could protect the tube from damage should the firearm be dropped or otherwise impact with a hard object. This is important because, if the gas tube is damaged, the firearm cannot function correctly and may even pose a safety hazard to a user.

### E) *A muzzle brake or compensator.*

A muzzle brake or compensator is designed to lessen the recoil felt when a firearm is fired. These devices are small metal attachments that are affixed to the end of a barrel that vent gases downward and away from the shooter. These devices are found on almost all long-range competition rifles as standard equipment. Add. at A-14, A-4. Muzzle brakes do not reduce the flash of the firearm; rather, they are engineered to make the firearm more enjoyable to shoot because they reduce the recoil felt. Accordingly, muzzle brakes are a common

accessory found on high-powered hunting rifles, as the reduced recoil provides a higher level of comfort for the shooter. Add. at A-4.

## CONCLUSION

Highland Park has outlawed certain firearms simply because they are equipped with common modern features that are designed to increase the accuracy, safety, and utility of the firearms. None of the prohibited features increase the dangerousness or lethality of a firearm in any way. In fact, most of them were specifically designed to increase the safety of a firearm by increasing stability and control while firing. Highland Park's Ordinance will not advance public safety, because it is not targeted at firearms or features that pose a risk to the public. Rather, Highland Park will expose its citizens to greater risk of harm by arbitrarily restricting access to the most popular, well-designed and safest firearms. For this reason, this Court should reverse the decision of the District Court and enter judgment for the Plaintiffs.

Respectfully submitted,

/s/ John Parker Sweeney
John Parker Sweeney
BRADLEY ARANT BOULT CUMMINGS, LLP
1516 L Street, NW, Suite 1350
Washington, DC 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com
Attorney for *Amici Curiae*

19

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(d) because this brief contains less than 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Dated: November 10, 2014

/s/ John Parker Sweeney
John Parker Sweeney
*Attorney for Amici Curiae*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of November, 2014, the foregoing brief was served, via electronic delivery to all parties' counsel via the Court's appellate CM/ECF system which will forward copies to Counsel of Record.


/s/ John Parker Sweeney
Of Counsel

21

ADDENDUM



A-1                                          Colt AR-15



A-2          Stag Arms AR-15 (Hunting)



A-3                    ArmaLite AR-15 (Target)



A-4    ArmaLite Rifle with Muzzle Brake



A-5                                    B-5 Pistol Grip



MOE Pistol Grip



A-7     SIG SAUER 556XI Pistol Grip



Case: 14-3081    Document: 18    Filed: 11/10/2014    Pages: 63

SIG SAUER Pistol Grip



A-9     SIG SAUER Rubber Pistol Grip



MCX Vertical Grip                    A-10



A-11                              Model M40 Rifle



A-12   SIG SAUER AR-15 (Buffer Tube)



A-13                                    SIG SAUER AR-15



A-14 Bushmaster AR-15 (Muzzle Brake)



A-15                    DPMS AR-15 (Target)



A-16    Remington AR-15 (Telescoping)



A-17          Remington AR-15 (Hunting)



A-18                          Remington Hunter



A-19                              Remington M700



A-20     Ruger Mini-14 (Thumbhole)



A-21     SIG SAUER AR-15 (Folding)



A-22    Smith & Wesson AR-15 (Hunter)



A-23Smith & Wesson AR-15 (Fore Grip)



**Model 1287 – 10/22RBD**



**Model 5601 – SR-762™**



**Model 5902 – SR-556®**



**Model 7040 – 77/22RM**



**Model 11134 – SR-22®**



**Model 11158 – 10/22-TSC**



**Model 37117 – Hawkeye®**



**Model 47119 – Hawkeye® African**



**Model 47125 – Ruger® Guide Gun**



**Model 5808 – KMini-14-ST**



**Model 5846 – Mini-14-20CF**



**Model 5914 – SR-556VT™**



**Model 8500 – SR-556™**



**Pistol Grip**



**Muzzle Brake System**